UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

JAMES STONECIPHER,                                          Civil  No.  05-2161

        Petitioner,                                    (JRT/JSM)

v.

                                      **REPORT AND RECOMMENDATION**

J.F. CARAWAY, Warden,

        Respondent.


        James Stonecipher, Federal Prison Camp - Duluth, P.O. Box 1000, Duluth, Minnesota, 55814, Petitioner, pro se.

        James Lackner, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415, for Respondent.


JANIE S. MAYERON, United States Magistrate Judge

        This matter is before the undersigned Magistrate Judge of the District Court on Petitioner=s application for a writ of habeas corpus pursuant to 28 U.S.C. ' 2241. (Docket No. 1.) Petitioner claims that the Bureau of Prisons, (ABOP@), has wrongly determined the date when he should be transferred from prison to a Community Corrections Center, (ACCC@) or home confinement. Respondent has filed a response to the petition, (Docket No. 9), contending that Petitioner=s CCC transfer date has been properly determined, and that he is not entitled to any relief in this case.

        The matter has been referred to this Court for report and recommendation under 28 U.S.C. ' 636 and Local Rule 72.1. For the reasons discussed below, the Court concludes that Petitioner=s CCC assignment date has not been properly determined. The Court

recommends that Petitioner be granted a writ of habeas corpus and that the BOP be required to immediately reconsider Petitioner=s CCC assignment date, in light of the criteria set forth in 18 U.S.C. ' 3621(b) and without regard to 28 C.F.R. ' ' 570.20 and .21.

## I.   **BACKGROUND**

Petitioner is a prisoner at the Federal Prison Camp in Duluth, Minnesota.  He is serving a 16-month federal prison sentence  that was imposed on May 19, 2004, following his conviction in the United States District Court for the Eastern District of Michigan for conspiracy to commit racketeering and money laundering in violation of the Racketeer Influenced and Organizations Act, 18 U.S.C. ' 1962(d).  If Petitioner earns all available good time credits, he will be released from prison on June 9, 2006.  However, he will be eligible for a transfer to community confinement or possibly home confinement, at some time prior to his release date of June 9, 2006.  Petitioner and the BOP disagree about when Petitioner will be eligible for such a transfer.

The BOP contends that Petitioner is not eligible for a CCC assignment until he has only ten percent of his prison term left to serve, which, according to the BOP=s calculations, will not occur until April 29, 2006.  Petitioner takes the position that he is eligible for placement in a CCC or home confinement on December 9, 2005, which is six months before his scheduled release.[1]  In support of this position, Petitioner has asked this Court to find 28 C.F.R. ' ' 570.20 and .21, adopted in February 2005 invalid, and to compel the BOP to consider CCC placement or immediate release to home confinement based on factors applied by the BOP

---

[1]      The BOP interprets Petitioner to be seeking six months of CCC placement and six months of home confinement.  See Response of the United States to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. ' 2241 (ABOP=s Response@) at pp. 2, 9 and 17.  This Court does not interpret the Petition in this manner.

prior to 2002.  See Petitioner=s Response to Respondent=s Response to Petitioner=s Writ of

Habeas Corpus Pursuant to 28 U.S.C. ' 2241 (APetitioner=s Response@) at pp. 1, 4-5.  In this

regard, Petitioner states that heAis not asking the Court to order a place of confinement, but is

only asking the court to order the BOP to consider its placement factors based off the [law]. . .

.@ Id.  Thus, Petitioner=s habeas corpus petition challenges the process by which the BOP

determined his CCC eligibility date.

## II.   DISCUSSION

Before addressing the merits of this case, it is necessary for this Court to take up two

procedural arguments made by the BOP in support of its position that the Petition should be

denied and the case dismissed with prejudice.  First, the BOP contended that this action

should be summarily dismissed because the relief that Petitioner is seeking here is not

available by means of a habeas corpus petition.  The applicable Ageneral rule@ supports the

BOP=s argument, because the federal habeas corpus statutes normally can be used only to

challenge the fact or duration of a prisoner=s confinement, and not the conditions of his

confinement.  Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam) (A[i]lf the

prisoner is not challenging the validity of his conviction or the length of his detention, such as

loss of good time, then a writ of habeas corpus is not the proper remedy@).  See also

Richmond v. Scibana, 387 F.3d 602, 605-06 (7th Cir. 2004) (prisoners may not use ' 2241 to

challenge CCC placement policies, because such challenges pertain to conditions of

confinement).  In this case, Petitioner is not challenging the fact or duration of his confinement;

he is challenging only the policies used to determine the proper place of his confinement.

However, as Petitioner has correctly pointed out, in Elwood v. Jeter the Eighth Circuit

did entertain a ' 2241 habeas corpus action challenging a CCC placement policy.  See

Elwood v. Jeter, 386 F. 3d 842 (8th Cir. 2004).  Although the Court of Appeals did not explain why the prisoner should be allowed to challenge the place of his confinement in a habeas corpus action, the prisoner=s claims were nevertheless decided on the merits.  This Court cannot find any material distinction between Elwood and the case at bar, to explain why Petitioner should be barred from challenging a CCC placement policy in a habeas corpus action, while the prisoner in Elwood was permitted to raise his similar claims in a habeas petition.  See also Knish v. Stine, 347 F.Supp.2d 682, 686 (D.Minn. 2004) (Davis J.) (A[s]ince the Eighth Circuit has recently decided [a] similar ' 2241 claim on the merits [in Elwood], jurisdiction is presumed, and this Court is now obligated to exercise jurisdiction over Knish=s petition for ' 2241 habeas corpus relief@).

The Court also notes that many other courts have allowed prisoners to challenge CCC placement policies in ' 2241 habeas cases.  See e.g., Woodall v. Federal Bureau of Prisons, --- F.3d ----, 2005 WL 3436626 at *6 (3rd Cir. December 15, 2005) (holding that challenge to the February 2005 Rules is a proper challenge to the Aexecution@ of a prisoner=s sentence, and that habeas jurisdiction lies under ' 2241). Pimentel v. Gonzales, 367 F.Supp.2d 365, 370 (E.D.N.Y. 2005); Franceski v. Bureau of Prisons, NO. 04 CIV. 8667 (LBS) (S.D.N.Y. 2005), 2005 WL 821703 at * 3-4; Harris, 2005 WL 2562970 at *2; Jennings, 2005 WL 2589181 at *2.  These cases, together with Elwood, lead the Court to conclude that Petitioner should be allowed to challenge the BOP=s CCC placement or home confinement policies by a petition for writ of habeas corpus.

Second, the BOP contended that this action should be summarily dismissed, because Petitioner failed to exhaust his available BOP administrative remedies before he filed his petition.  Petitioner concedes that he did not exhaust his administrative remedies before

commencing this action, but he argues that he should be excused from the exhaustion requirement, because (a) it would have been Afutile@ to pursue his current claims for relief through the BOP≥s administrative remedy process, and (b) he would have been kept in prison past the earliest release date possible.

The Court recognizes that federal prisoners normally must exhaust all available administrative remedies before seeking federal habeas corpus relief under 28 U.S.C. ' 2241. United States v. Chappel, 208 F.3d 1069, 1069-70 (8th Cir. 2000) (per curiam); Kendrick v. Carlson, 995 F.2d 1440, 1447 (8th Cir. 1993); Leighnor v. Turner, 884 F.2d 385, 387 (8th Cir. 1989); Willis v. Ciccone, 506 F.2d 1011 (8th Cir. 1974); United States v. Sithithongtham, 11 Fed.Appx. 657, 658 (8th Cir. 2001) (per curiam) (unpublished opinion); United States v. Stuckey, 33 Fed.Appx. 245 (8th Cir. 2002) (per curiam) (unpublished opinion). However, in rare cases, habeas petitioners can be excused from the exhaustion requirement, if they can show that proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose. See Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam) ("[e]xceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action"), quoting Hessbrook v. Lennon, 777 F.2d 999, 1003 (5th Cir.1985); see also Elwood v. Jeter, 386 F.3d 842, 844, n. 1 (8th Cir. 2004) (exhaustion requirement waived based on government≥s concession that Acontinued use of the [administrative] grievance procedure to contest the validity of the BOP≥s new policy [on CCC eligibility] would be futile@).

In this case, the Court finds that it would have been futile for Petitioner to prosecute his current claims through the BOP≥s administrative remedy process. He is challenging the

validity of a BOP policy that the BOP has steadfastly defended.  There is no reason to believe that the BOP would have reconsidered the validity of its policy if Petitioner had sought relief under the administrative remedy process.

In addition, in other cases involving challenges to the policy at issue here, federal district courts have consistently waived the exhaustion requirement based on the futility exception.  See e.g., Baker v. Willingham, NO. 3:04CV1923(PCD) (D.Conn. 2005) 2005 WL 2276040 at *7 (Aexhaustion of administrative remedies would have been futile as it is clear that Petitioner's claim would have been rejected based on official BOP policy@); Jennings v. Sanders, No. 2:05CV00209 HDY (E.D.Ark. 2005), 2005 WL 2589181 at *2 (requiring prisoner to exhaust administrative remedies would be futile, because Athe BOP has taken a clear, consistent, and widespread stand against [the prisoner=s] position@); Harris v. Federal Bureau of Prisons, No. Civ. A.05-323 RBK (D.N.J. Oct. 6, 2005), 2005 WL 2562970 at *4 (noting that Amost courts have declined to dismiss challenges to the BOP=s CCC placement policy on exhaustion grounds@).  Based on the reasoning and authority provided by these cases, the Court concludes that this action should not be dismissed on the grounds of non-exhaustion.

The Court will now examine the merits of Petitioner=s claim that the BOP should be ordered to consider placing him in home confinement or CCC now.

A.   **History of CCC Assignments**

Federal law gives the BOP the authority to determine where federal prisoners should be confined.  The applicable federal statute, 18 U.S.C. ' 3621(b), provides that:

> The Bureau of Prisons shall designate the place of the prisoner's

imprisonment.[2] The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence--
    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer

---

[2]    The term Aimprisonment@ under ' 3621(b) includes custody in a correctional facility or home confinement program. See 18 U.S.C. ' 3624(c); see also 28 C.F.R. ' 570.20)(b) (including home confinement as part of Acommunity confinement@); Elwood, 386 F. 3d at 844 (finding that the BOP=s grant of authority under this grant of authority must be read in conjunction with 18 U.S.C. ' 3624(c)); Moresco v. United States, 982 F.2d 529, 1992 WL 372399, at *2 (10th Cir. 1992) (finding that home confinement is a place of imprisonment for the purposes of ' 3621(b)) (citations omitted); Crowley v. Federal Bureau of Prisons, 312 F. Supp.2d 453, 462 (S.D.N.Y. 2004) (same).

of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

A different statute, 18 U.S.C. ' 3624(c), directs the BOP to give special attention to the housing assignments of prisoners who are approaching the end of their sentences, in order to help them successfully re-enter society upon being released from custody. This statute provides that:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

18 U.S.C. ' 3624(c).

Prior to December 2002, the BOP took the position that a CCC was a Aplace of imprisonment,@ and that, pursuant to ' 3621(b), a federal prisoner could be assigned to a CCC at anytime during his sentence, although customarily, federal prisoners were sent to CCCs during the last six months of their sentences, to meet the transitional requirements imposed by ' 3624(c). But on December 13, 2002, the Office of Legal Counsel ("OLC") of the United States Department of Justice issued a memorandum, which declared that this longstanding interpretation and implementation of the housing assignment statutes was incorrect.[3]

---

[3]     The OLC Memorandum Opinion dated December 13, 2002, can be found at 2002 WL 31940146.

The OLC concluded that the term Aplace of imprisonment@ could not include a CCC assignment, which meant that prisoners could not be assigned to CCCs pursuant to the general housing authority provided by ' 3621(b).  Instead, the OLC decided that an inmate could be transferred to a CCC only as part of the pre-release programming mandated by ' 3624(c).[4]  According to the Memorandum, federal law prohibited offenders from being assigned directly to half-way houses, even though that practice has been used for many years, in many cases, with the universal approval of U.S. Attorneys, the BOP, and the federal judiciary.

---

[4]   Most of the OLC Memorandum was focused on whether federal offenders could properly be assigned to a CCC immediately after being sentenced, without spending any time at all in federal prison.

The OLC Memorandum also included a brief reference to the BOP=s longstanding practice of assigning federal prisoners to CCCs for the final six months of their sentences. The Memorandum indicated that ' 3624(c) authorizes the BOP to assign a prisoner to a half-way house <u>only for the lesser</u> of (a) the last six months of his sentence, or (b) the last ten percent of his sentence.[5]

The OLC Memorandum prompted Deputy Attorney General Larry D. Thompson to write his own Memorandum to the Director of the BOP.  That second Memorandum, which is dated December 16, 2002, (just three days after the OLC Memorandum), focused primarily on the question of whether a federal criminal can be placed directly in a CCC prior to the last six months of his sentence.  However, the Thompson Memorandum also included one paragraph addressing the BOP=s practice of sending prisoners to half-way houses for the last six months of their sentences.  That paragraph reads as follows:

---

[5]     Footnote 6 of the OLC Memorandum Opinion dated December 13, 2002, stated:

> Your office has advised us that BOP, in exercising its authority under section 3624(c), has sometimes not abided by the time limitation set forth in that section.  The authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period>not to exceed six months, of the last 10 per centum of the term to be served,= 18 U.S.C. ' 3624, and we see no basis for disregarding this time limitation.

> The OLC opinion additionally notes that, while BOP does have limited statutory authority in 18 U.S.C. ' 3624(c) to transfer an offender to a CCC prior to his release so as to >afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner=s re-entry into the community,= there are firm restrictions on such transfers.  Specifically, the transfer may not exceed the <u>lesser</u> of (i) the last ten percent of the sentence imposed on the offender, i.e., the period of time in which the offender was committed to the custody of the BOP, or (ii) six months.  The OLC opinion concludes that there are no bases for disregarding these time limitations.@ (Emphasis in the original.)[6]

In response to this paragraph of the Thompson Memorandum, as well as the earlier OLC Memorandum, the BOP immediately changed its policies and practices for assigning prisoners to CCCs.  The BOP announced that on a going forward basis it would exercise its authority under ' 3624(c) based on its new understanding of the law -- <u>i.e.</u>, that the statute itself allows a prisoner to be placed in a CCC only for the lesser of the last ten percent of his sentence or the last six months of his sentence.

During 2003 and 2004, federal prisoners challenged the BOP=s new interpretation of ' 3624(c) in numerous federal court cases.   Some courts agreed with the BOP=s new understanding and implementation of ' 3624(c), but many others concluded that the BOP was wrong.  The issue came before the Eighth Circuit Court of Appeals in <u>Elwood v. Jeter</u>, <u>supra</u>.

In <u>Elwood</u>, the Court rejected the BOP=s restrictive interpretations of ' ' 3621(b) and 3624(c).  The Court held that A' 3621(b) gives the BOP the discretion to transfer prisoners to CCCs <u>at any time during their incarceration</u>.@ <u>Id</u>. at 847 (emphasis added).  The Court further held that, pursuant to ' 3624(c), Athe BOP is <u>required</u> to place prisoners in >conditions that will

---

[6]     The Thompson Memorandum of December 16, 2002, can be found on the Internet at Ahttp://www.usdoj.gov/dag/readingroom/imprisonment.htm.@  The section of that Memorandum that is quoted in the text can be found at p. 2, ' II.

afford [them] a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community= during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable[; but] [t]his duty shall not extend beyond the last six months of the prisoner's sentence.@ Id. (emphasis added).

In response to Elwood, and the First Circuit=s decision in Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004), the BOP re-examined its CCC assignment policies, and promulgated new rules on the subject. These new rules, which became effective on February 14, 2005, (Athe February 2005 Rules@), provide as follows:

**' 570.20 What is the purpose of this subpart?**

(a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

(b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

**' 570.21 When will the Bureau designate inmates to community confinement?**

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).@

28 C.F.R. '' 570.20 and .21 (emphasis added).

Pursuant to the February 2005 Rules, the BOP will no longer assign any prisoner to a CCC or equivalent housing assignment, until the prisoner reaches the lesser of the final ten percent of his sentence or the last six months of his sentence.  Thus, even though the BOP recognized that it has the statutory authority to assign a prisoner to a CCC at any time, the BOP has determined, as a matter of agency policy, that no prisoner will ever be assigned to such alternative housing before reaching the final ten percent of his sentence.  As one federal district court recently observed:  AIn practice, the effect of the February 2005 Rule is identical to the December 2002 Policy in that both limit the BOP=s discretion to designate inmates to CCCs to the last ten percent of the prison sentence being served, not to exceed six months.@ Baker, 2005 WL 2276040 at *3.  In other words, A[w]hereas the BOP had previously argued that Section 3624(b) prevented it from designating a CCC placement prior to the last ten percent of a prison term, the BOP's new position is that it does have the discretion to place an inmate in a CCC for all or any portion of the prison sentence, but has chosen to>exercise its discretion categorically= and to decline to authorize CCC placement for any prisoner prior to the last ten percent of his sentence.@ Lesnick v. Menifee, No. 05 Civ. 4719 JCF (S.D.N.Y. 2005), 2005 WL 2542908 at *3.

B.      **Application of the February 2005 Rules to Petitioner**

The BOP relied on its new February 2005 Rules when it determined the date when Petitioner should be transferred to a CCC.  The BOP informed Petitioner that, pursuant to these Rules, he was automatically ineligible for a transfer to a CCC until he reached the last ten percent of his sentence (i.e., 41 days of CCC placement), which according to the BOP, will be April 29, 2006, at the earliest.

In opposition, Petitioner makes two arguments in support of his claim that he is entitled to six months of CCC placement or home confinement.  First, he contends that the 10% requirement set forth in ' 3624(c) is invalid and that he is entitled to six months of CCC placement or home confinement under the BOP=s prior interpretation of ' 3624(c).  See Petition at p. 3 (Grounds 1, 3); Petitioner=s Response at pp. 1, 4.  Second, Petitioner asserts that the February 2005 Rules are invalid under 18 U.S.C. ' 3621(b) and that the BOP should be compelled to consider CCC placement or immediate release to home confinement based on factors set forth in 18 U.S.C. ' 3621(b).[7]  Id. at p. 5.  The Court rejects Petitioner=s first argument under ' 3624(c), but agrees that the February 2005 Rules is invalid under 18 U.S.C. ' 3621(b).

      1.     18 U.S.C. ' 3624(c)

Section 3624(c) is explicit: A[t]he Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will

---

[7]     The BOP characterized Petitioner=s request as seeking an injunction, and then argued that he was not entitled to such relief because he has failed to establish a substantial threat of irreparable harm or that there is a likelihood of success on the merits of his claim. See BOP=s Response at pp. 17-18.  While it is true that Petitioner has asked for an order compelling the BOP to consider the placement factors set forth in 18 U.S.C. ' 3621(b) in connection with its determination of whether to grant him either six months of home confinement or six months of CCC placement, no where in the Petition or Petitioner=s Response has he stated that he was asking for injunctive relief.

afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community . . . .@  The plain language of ' 3624(c) does not entitle Petitioner to six months of CCC placement or six months of home confinement.  Section 3624(c) only requires the BOP to ensure that a prisoner spends at least 10% of his sentence, <u>not to exceed a period of six months</u> under conditions that afford a prisoner to prepare for entry back into the community.  Petitioner has not provided this Court any authority for the argument that the 10% clause in ' 3624(c) is invalid.  Further, there is no requirement that Petitioner even be placed in a CCC or home confinement.  The Eighth Circuit has found that A18 U.S.C. ' 3624(c) does not require placement in a CCC.  It only obligates the BOP to facilitate the prisoner's transition from the prison system.@  <u>Elwood</u>, 386 F.3d at 847.   In addition, a prisoner does not have a constitutional due process right to incarceration in a particular place or at a particular institution.  <u>See</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245-46 (1983); <u>see</u> <u>also</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976).

For all of these reasons, this Court finds that Petitioner is not automatically entitled to six months of community placement, whether it be CCC placement or home confinement, under ' 3624(c).

2.      18 U.S.C. ' 3621(b)

Petitioner contends that the BOP should not be allowed to rely on the February 2005 Rules to categorically deny community placement to all prisoners who have not reached the final ten percent of their sentences, because the Rules contravene the statutory directives of '' 3621(b) and 3624(c).  This Court agrees.

Since the adoption of the February 2005 Rules, many federal district courts have considered whether the Rules represent a permissible exercise of the BOP=s statutory

authority and responsibilities.  While several of those courts have upheld the February 2005 Rules,[8] there appears to be about an equal number of courts that have found them to be invalid,[9] including another court in this District.  See Hayek v. Caraway, Civil No. 05-1424 (PAM/JSM) (Report and Recommendation dated November 21, 2005 [Docket No. 10]), adopted by Judge Paul A. Magnuson in his December 7, 2005 Order (2005 WL 3334600) [Docket No. 13]. To date, the only federal appellate court that has considered this issue, has found the February 2005 Rules to be invalid.  See Woodall v. Federal Bureau of Prisons, --- F.3d ----, 2005 WL 3436626 (3rd Cir. December 15, 2005).

Virtually all of the courts that have considered the propriety of the BOP=s February 2005 Rules have found guidance in the Supreme Court=s decision in Lopez v. Davis, 531 U.S. 230 (2001).  In Lopez, the Court considered whether the BOP had properly interpreted 18 U.S.C. ' 3621(e)(2)(B), a statute that authorizes the BOP to grant sentence reductions to prisoners who participate in drug rehabilitation programs.  Section 3621(e)(2)(B) gives the BOP the option, but does not require, of reducing a prisoner=s sentence by up to one year if (a) he has been

---

[8]    See e.g., Yip v. Fed. Bureau of Prisons, 363 F.Supp.2d 548 (E.D.N.Y.2005); Moss v. Apker, 376 F.Supp.2d 416 (S.D.N.Y. 2005); Eli v. Apker, NO. 05 CIV. 2703(DC) (S.D.N.Y. 2005), 2005 WL 2848956; Charboneau v. Menifee, No. 05 Civ.1900(MBM) (S.D.N.Y. 2005), 2005 WL 2385862; Morales v. Francis, NO. CIV.A. H-05-2955 (S.D.Tex. 2005), 2005 WL 2467691;  Hurley v. Sherrod, NO. CIV.A 05CV01177LTBPAC (D.Colo. 2005), 2005 WL 2141490; Brown v. Nash, No. Civ.A. 04-5614(JBS), 2005 WL 3216531 (D. N.J. 2005); Montoya v. Rios, No. Civ.A. 05CV00606PSFP, 2005 WL 3271489 (D.Colo 2005).

[9]    See e.g., Pimintel, supra; United States v. Paige, 369 F.Supp.2d 1257 (D.Mont. 2005); Baker; supra; Drew v. Menifee, No. 04 Civ. 9944(HBP) (S.D.N.Y. 2005), 2005 WL 525449; Cook v. Gonzales, No. Civ. 05-09- AS, (D. Or. 2005), 2005 WL 773956; Lesnick, supra; Jennings v. Sanders, NO. 2:05CV00209 HDY(E.D.Ark. 2005) 2005 WL2589181; see also Amended Report and Recommendation dated November 15, 2005 by Magistrate Judge Jeanne J. Graham in Ragsdale v. Caraway, Civil No. 05-1596 (MJD/JJG) [Docket No. 15]; Report and Recommendation dated December 113, 2005 by  Magistrate Judge Author J. Boylan in Threlkeld v. Morrison, No. 05-2604 (PAM/AJB).

Aconvicted of a nonviolent offense,@ and (b) he successfully completes an approved drug rehabilitation program.

Specifically, 18 U.S.C. ' 3621(e)(2)(B) provides in relevant part:

> The period a prisoner convicted of a non-violent offense remains in custody after successfully completing a treatment program <u>may</u> be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must serve.

(Emphasis added).

Sometime after ' 3621(e)(2)(B) was enacted, the BOP determined that if a prisoner had received an enhanced sentence because his offense involved possession of a firearm, then he had been convicted of aAviolent offense@ for purposes of ' 3621(e)(2)(B), and he was therefore automatically ineligible for a reduced sentence under the statute.  This interpretation of ' 3621(e)(2)(B) was rejected by many federal courts, including the Eighth Circuit Court of Appeals.  <u>See</u> <u>Martin v. Gerlinski</u>, 133 F.3d 1076, 1079 (8th Cir. 1998) (Athe inclusion of sentencing enhancement factors in the determination of what is a>nonviolent offense= is not a permissible interpretation of the statute@).  The BOP responded to these decisions by changing its rules.  Under the BOP=s revised rules, prisoners who received firearm enhancements were still automatically ineligible for sentence reductions.  But instead of relying on its own interpretation of the statutory term Aviolent offense@ to exclude such prisoners, the BOP relied on its broad statutory discretion under ' 3621(e)(2)(B) to determine which non-violent offenders should be eligible for sentence reductions.  Thus, under the BOP=s revised rules, prisoners who had received firearm enhancements were categorically excluded from receiving a sentence reduction Anot because ' 3621(e)(2)(B) so mandates, but pursuant to the Bureau=s asserted discretion to prescribe additional early release criteria.@ <u>Lopez</u>, 531 U.S.

at 235-36.

In Lopez, the Supreme Court considered whether the BOP could properly exercise its discretion under ' 3621(e)(2)(B) in such a categorical fashion B i.e., by ruling that all prisoners who receive a sentence enhancement due to firearm possession are automatically excluded from consideration for a reduced sentence.  The Supreme Court upheld the BOP=s categorical exclusion rules, stating:

> Beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstances in which the Bureau either must grant the reduction, or is forbidden to do so.

Id. at 242.

The Court then held that:

> [E]ven if a statutory scheme requires individualized determinations ... the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.

Id. at 243-244, quoting American Hospital Assn. v. NLRB, 499 U.S. 606, 612, (1991) (internal quotation marks omitted).

The BOP now contends that the February 2005 Rules must be treated the same as the sentence reduction regulation that was upheld by the Supreme Court in Lopez.  The BOP claims that its discretionary authority to make categorical CCC assignments under ' ' 3621(b) and 3624(c) is just as unfettered as its authority to make categorical sentence-reduction decisions under ' 3621(e)(2)(B).  Those federal district courts that have accepted this assertion have concluded that Lopez does indeed affirm the BOP=s broad authority to exercise its congressionally-granted discretion by means of categorical rules.  In Yip, for example, the

18

court stated that:

> [C]ontrary to petitioner's assertion, the BOP is authorized to create categorical Rules even where a statute requires individualized determinations.... In <u>Lopez</u>, the Supreme Court rejected a challenge to the BOP's creation of a categorical Rules excluding certain inmates from a discretionary early release program. There is no significant distinction between the situation in <u>Lopez</u> and the case at hand. The BOP has identified a category of prisoners B inmates who are not yet required to be considered for transfer to a CCC under Section 3624(c), but are eligible under Section 3621(b) B and created a Rules denying transfer to all of them, in conflict with no identified directive of Congress. Thus, the court... concludes that there is no merit to petitioner's contention that the BOP was not authorized to create this type of categorical Rules.

363 F.Supp.2d at 552.

The courts that have upheld the BOP=s February 2005 Rules on CCC assignments have also emphasized that the relevant federal statutes, (' ' 3621(b) and 3624(c)), like the statute at issue in <u>Lopez</u>, (' 3621(e)(2)(B)), expressly grant broad discretionary authority to the BOP.[10] Those courts have pointed to Congress=s use of the word Amay,@ rather than Ashall,@ in the applicable clause of ' 3621(b) B <u>i.e.</u>, A[t]he Bureau <u>may</u> designate any available penal or correctional facility that meets minimum standards of health and habitability....@ (Emphasis added.) In <u>Harris</u>, for example, the Court explained:

> [T]he clause pertaining to the BOP's consideration of five factors in ' 3621(b) is not preceded by the term >shall=, but instead, employs the permissive term >may=. This Court declines to read a mandatory obligation into the text of ' 3621(b) with respect to the BOP's discretionary consideration of the five factors when such an interpretation would render the word >may= meaningless.

2005 WL 2562970 at * 9.

---

[10]   Respondent echos this argument in the Response filed in this case. <u>See</u> BOP=s Response at pp. 14-15.

The courts upholding the BOP=s February 2005 Rules have further suggested that the legislative history of ' 3621(b) provides additional support for the broad discretionary authority asserted by the BOP.  In <u>Harris</u>, the Court stated that:

> [T]he Senate Judiciary Committee Report emphasizes that the Committee's listing of factors [in ' 3621(b)] for the BOP's consideration in determining the appropriateness of a facility for placement or transfer Adoes not intend to restrict or limit the Bureau in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability of the Bureau ..."

<u>Id.</u> at * 10, quoting S.Rep. No. 98-225, reprinted in 1984 U.S.C.C.A.N. 3182, 3325.

The Court obviously recognizes the precedential significance of <u>Lopez</u>, and appreciates that <u>Lopez</u> approved the use of categorical decision-making rules by the BOP under the circumstances presented in that case.  However, for the reasons discussed below, this Court respectfully disagrees with the courts that have upheld the February 2005 Rules, and instead joins those courts that have found the Rules to be an impermissible exercise of the BOP=s discretion.

a.    <u>The statute in Lopez did not include a specific list of factors</u>

This case is distinguishable from <u>Lopez</u> because ' 3621(b) limits the BOP=s discretion in ways that ' 3621(e)(2)(B), the statute at issue in <u>Lopez</u>, does not.  Section 3621(b) lists the following five specific criteria that the BOP is required to consider when making prison housing assignments, including CCC home confinement assignments:

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence--

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
(B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission

pursuant to section 994(a)(2) of title 28.@

However, the statute at issue in <u>Lopez</u> did not include any list of factors comparable to the list set forth in ' 3621(b).  Rather, ' 3621(e)(2)(B) allows the BOP, without any limit or even guidance from Congress, to decide which non-violent offenders who complete a drug rehabilitation program should get sentence reductions.  Consequently, the BOP elected to exercise that discretion in a categorical fashion, and the Supreme Court upheld that approach, emphasizing that there was nothing in ' 3621(e)(2)(B) that suggested there is any need to make Aindividualized determinations.@ <u>Lopez</u>, 531 U.S. at 241-42.

Here, however, the language of ' 3621(b) expressly prescribes five specific criteria that are to be used in making housing decisions.  Several of those criteria cannot be applied in a categorical fashion; rather they require some consideration of a prisoner=s individual circumstances, lending support to the conclusion that the BOP is required to make individualized determinations of a prisoner=s eligibility for CCC placement.  Three of the statutory criteria are particularly noteworthy B Athe nature of the circumstances of the offense,@ Athe history and characteristics of the prisoner,@ and Aany [relevant] statement by the court that imposed the sentence.@ These three criteria, which Congress has explicitly directed the BOP to consider when making prison assignments, necessarily require consideration of a prisoner=s individual circumstances.

Thus, this Court concludes that the statute at issue here, unlike the statute in <u>Lopez</u>, includes Congressional direction to the BOP, which constrains the exercise of the BOP=s

discretion with regard to housing assignments and cannot be disregarded.   Furthermore,

several of the criteria listed in the statute cannot be applied in a general fashion; they can only

be applied individually.   As the Court observed in <u>Pimentel</u>:

> In <u>Lopez</u>, the statute denying early release eligibility to violent
> offenders manifested congressional concerns for preconviction
> behavior that suggested a propensity for violence and a
> corresponding risk to the public.   BOP's determination to extend
> the class of inmates ineligible for early release to inmates who
> possessed a firearm in connection with their nonviolent offenses
> addressed these same concerns. <u>See</u> <u>Lopez</u>, 531 U.S. at 244,
> 121 S.Ct. 714. Here, rather than merely delineate the boundaries
> of its discretion consistent with congressional intent as in <u>Lopez</u>,
> the February 2005 Rules removes all discretion in all cases in
> determining whether to transfer an inmate to a CCC at any time
> prior to the last ten percent of the inmate's sentence. While BOP
> has the authority to clarify the contours of its discretionary
> authority as it relates to certain classes of issues, this court is
> unconvinced that BOP may categorically remove its entire ability
> to exercise its discretion, where, as here, the enabling statute
> provides specific factors relevant to whether CCC placement
> may be appropriate prior to the last ten percent of a prisoner's
> sentence.

* * *

> Although Section 3621(b) sets forth several factors intended to inform BOP's decision-making with regard to CCC placement prior to the last ten percent of an inmate's sentence, unlike the Rules promulgated in <u>Lopez</u>, the February 2005 Rules in no way furthers or interprets these factors. Instead, it disregards them.

<u>Pimentel</u>, 367 F. Supp. 2d at 374-75.

The Court finds that the BOP=s February 2005 Rules, which makes an across-the-board determination that no prisoner will ever be assigned to a CCC or home setting before reaching the last ten percent of his sentence, constitutes an impermissible implementation of the discretion that Congress has vested in the BOP. AIn sum, individual determinations are required by ' 3621(b). <u>Lopez</u> therefore does not control. While the BOP may exercise considerable discretion, it must do so using the factors the Congress has specifically enumerated.@ <u>Woodall</u>, --- F.3d ----, 2005 WL 3436626 at *10.

> b.      <u>Legislative history does not support the position of the BOP</u>

Several courts that have examined February 2005 Rules have looked to the legislative history of ' 3621(b) for guidance. In this regard, Senate Judiciary Committee, S.Rep. No. 98-225, reprinted in 1984 U.S.C.C.A.N. 3182, 3324-25, includes the following explanation of the statute:

> Proposed 18 U.S.C. 3621(b) follows existing law [footnote omitted] in providing that the authority to designate the place of confinement for federal prisoners rests in the Bureau of Prisons. [Footnote omitted.] The designated penal or correctional facility need not be in the judicial district in which the prisoner was convicted and need not be maintained by the federal government.
>   Existing law provides that the Bureau may designate a place of confinement that is available, appropriate, and suitable. <u>Section 3621(b) continues that discretionary authority with a new requirement that the facility meet minimum standards of health and habitability established by the Bureau of Prisons. In determining the availability or suitability of the facility selected, the Bureau i[s] specifically required to consider such factors as the resources of the facility considered, the nature and</u>

circumstances of the offense, the history and characteristics of the prisoner, the statements made by the sentencing court concerning the purposes for imprisonment in a particular case, [footnote omitted] any recommendations as to type of facility made by the court, and any pertinent policy statements issued by the sentencing commission pursuant to proposed 28 U.S.C. 994(a)(2). After considering these factors, the Bureau of Prisons may designate the place of imprisonment in an appropriate type of facility, or may transfer the offender to another appropriate facility.

In the absence of unusual circumstances, federal courts currently will not review a decision as to the place of confinement. [Footnote omitted.] The Committee, by listing factors for the Bureau to consider in determining the appropriateness or suitability of any available facility, does not intend to restrict or limit the Bureau in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability of the Bureau, but intends simply to set forth the appropriate factors that the Bureau should consider in making the designations.@ (Emphasis added.)

Those courts that have invalidated the February 2005 Rules have found that the Senate Report shows a clear congressional intent to limit the BOP=s housing assignment discretion. Pimentel, 367 F.Supp.2d at 375; Drew, 2005 WL 525449 at *4; Lesnick, 2005 WL 2542908 at * 6-7. This Court agrees. Read in its entirety, the Senate Report indicates that while Congress intended for the BOP to retain broad discretion in making prisoner housing assignments, Congress also expected the BOP to consider the five factors listed in the statute when exercising such discretion. See Woodall, --- F.3d ----, 2005 WL 3436626 at *8. The Report certainly does not indicate that the five factors listed in ' 3621(b) are purely optional, and can be totally ignored by the BOP, if it so chooses.

c.   The February 2005 Rules do not address the statutory factors; the Rules disregard them

Some courts have upheld the February 2005 Rules on the grounds that even if the five

factors listed in ' 3621(b) are not optional, the Rules should be upheld as a proper exercise of

the BOP=s housing assignment authority, because the BOP actually considered those five

factors when it promulgated the new Rules have accepted this argument. <u>See</u> <u>e.g.</u>, <u>Moss</u>, 376

F.Supp.2d at 423 (A[t]he BOP has unequivocally stated that it has considered each of these

five statutory factors, as well as other pertinent considerations, when developing the February

2005 Policy [and] [t]he Court see no reason to doubt the veracity of these statements@); <u>Brown</u>

<u>v. Nash</u>, No. Civ.A. 04-5614(JBS) (D.N.J. 2005), 2005 WL 3216531 at *7.

       This Court rejects this argument.  It is readily apparent that the February 2005 Rules,

which categorically exclude all prisoners from CCC assignments before reaching the last ten

percent of a sentence, does not take into account the five statutory criteria. <u>See</u> <u>Woodall</u>, ---

F.3d ----, 2005 WL 3436626 at *10 (ABy definition, particular circumstances cannot be

considered in promulgating a blanket rule.@).  As noted above, at least three of those criteriaB

(i) the nature and circumstances of a prisoner=s offense, (ii) a prisoner=s Ahistory and

characteristics,@ and (iii) any relevant comments offered by the sentencing judge B could never

be addressed by the BOP=s Rules.  In truth, the February 2005 Rules simply disregard these

three statutory criteria that are necessarily unique to each individual prisoner.  As a result, the

Rules violate Congress=s instructions.  As the Court explained in <u>Lesnick</u> B

> The Rules makes individualized determinations unavailable; the
> BOP will not entertain any requests for placement in a CCC prior
> to the last ten percent of a prisoner's term, unless the individual
> falls under a narrow exception for participation in certain
> treatment programs.  No consideration is given to the nature and
> circumstances of the offense or the history and characteristics of
> the prisoner, and the regulation completely disregards any
> judicial recommendation or statement regarding the purposes of
> an inmate's imprisonment.

<u>Lesnick</u>, 2005 WL 2542908 at * 7.

d.   Deference to the BOP

Citing to Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), the BOP argued that as the agency charged with administering both 18 U.S.C ' 3624(c) and 18 U.S.C ' 3621(b), its interpretation of these statutes, as codified in the February 2005 Rules, is entitled to full deference.  See BOP=s Response at p. 12.  Under Chevron, the statute must first be examined to determine whether Congress has spoken to the precise question at issue.  If indeed Athe intent of Congress is clear, that is the end of the matter; for the court as well as the agency must give effect to the unambiguously expressed intent of Congress.@ Id. at 842-43.  If, on the other hand, the intent of Congress is not clear on the face of the statute, the question becomes whether the agency's interpretation is based on a permissible construction of the statute.  Id.  That is, Aonly >if the statute is silent or ambiguous with respect to the specific issue= will the Court address >whether the agency=s answer is based on a permissible construction of the statute.=@ Hayek, 2005 WL 3334600 at *4 (citing Chevron, 467 U.S. at 843).  And then, even under those circumstances, the legislative regulations will prevail only if they are not found to be Aarbitrary, capricious, or manifestly contrary to the statute.@ Id. at 844.

The BOP=s Chevron argument fails for three reasons.  First, the underlying premise of the BOP=s argument that its regulations must be given full deference under Chevron, is that while 18 U.S.C. ' 3624(c) is unambiguous, ' 3621(b) is silent on the issue of whether the BOP must make all facility designation decisions on a case-by-case basis or whether it may instead exercise its designation discretion categorically.  See  BOP=s Response at 12-13.  The problem with the BOP=s reasoning is that its description of what the statute must include to be clear and unambiguous is flawed.  The issue is not whether Congress has stated whether

facility designation decisions may be made on a case-by-case basis or whether the BOP may instead exercise its designation discretion categorically; rather, the question is whether Congress clearly expressed those factors which the BOP must consider when it exercises its discretion in making prison placements, or whether Congress was silent on this issue, leaving it to the BOP to develop the factors.

Second, as discussed above, this Court has concluded that Congress did clearly express those factors which the BOP must consider when making prison placements.  The plain language of ' 3621(b) requires the BOP to consider all five factors in the statute when making a individualized determination of a prisoner=s place of imprisonment.  See Lesnick, 2005 WL 2542908 at *9-10 (ACongress has clearly laid out five factors to guide the BOP in determining which inmates are best suited for placement in CCCs.@); see also Woodall, --- F.3d ----, 2005 WL 3436626 at *11.  As a result, having spoken on the issue, the BOP=s interpretation of the statute is not required, and is entitled to no deference.

Third, even if assuming ' 3621(b) is ambiguous, the BOP=s interpretation of the statute B which categorically ignores certain factors delineated in the statute B is not a permissible construction of the statute.  As the Third Circuit stated in Woodall:

> >Even for an agency able to claim all the authority possible under Chevron, deference to its statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent.= Gen. Dynamics Land Sys. v. Cline, 540 U.S. 581, 600, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004). Here, we are faced with a statute providing that the BOP must consider several factors in CCC placement, and a regulation providing that the agency may not consider those factors in full. The conflict between the regulations and the statute seems unavoidable.

Woodall, --- F.3d ----, 2005 WL 3436626 at *11.

While clearly ' 3621(b) arms the BOP with broad discretion in its ultimate placement of prisoners, that discretion must be consistent with and give effect to all, and not just some, portions of the statute.  Having failed to include all five factors in its February 2005 Rules, this Court concludes that the BOP=s exercise of discretion was arbitrary and capricious and cannot be upheld.  See Hayek, 2005 WL 3334600 at *4.

## III.   **CONCLUSION**

For the reasons discussed above, the Court concludes that the BOP cannot rely on its February 2005 Rules, (28 C.F.R. '' 570.20 and .21), to categorically exclude all federal prisoners from being assigned to CCCs or home confinement until they reach the last ten percent of their sentence to be served.  The Eighth Circuit Court of Appeals has already ruled that neither ' 3621(b) nor ' 3624(c) precludes prisoners from being assigned to CCCs at any time.  Elwood, 386 F.3d at 846-47.  This Court now finds that ' 3621(b) requires the BOP to consider the five factors listed in the statute when deciding whether, and when, a prisoner should be assigned to a CCC or comparable housing arrangement.  The February 2005 Rules causes such decisions to be made without any regard to several of the factors listed in the statute.  Therefore, the Rules contravenes the statute.

Because the February 2005 Rules does not follow the statute, the Court finds that the BOP could not properly use its Rules to automatically bar Petitioner from a CCC assignment or home confinement before he reaches the last ten percent of his sentence.  The BOP should be required to reconsider its decision about when Petitioner should be assigned to a CCC or home confinement, without regard to the categorical directive of the February 2005 Rules.  Of course, the BOP will continue to have broad discretion to decide whether and when Petitioner should be assigned to a CCC or home confinement, but that discretion must be exercised

based on the factors prescribed in ' 3621(b), rather than the absolute mandate prescribed by the February 2005 Rules.

Accordingly, the Court recommends that Petitioner be granted a writ of habeas corpus that directs the BOP to immediately reconsider the date when Petitioner should be assigned to a CCC, in light of the criteria set forth in 18 U.S.C. ' 3621(b) and without regard to 28 C.F.R. '' 570.20 and .21.

## IV.   **RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

The Petitioner=s application for a writ of habeas corpus pursuant to 28 U.S.C. ' 2241, (Docket No. 1), be **GRANTED**, and that Respondent be directed to immediately reconsider its decision as to whether to Petitioner should be assigned to a CCC or home confinement, in light of the criteria set forth in 18 U.S.C. ' 3621(b) and without regard to 28 C.F.R. '' 570.20 and .21.

Dated:        December 23, 2005

                         *s/ Janie S. Mayeron*
                         JANIE S. MAYERON
                         United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 4, 2006**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be

limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.